Okay, our final argument of the morning is Appeal Number 22-19-01, Fetting v. Kijakazi. Good morning, Mr. Duncan. Good morning, Your Honor. May it please the Court, Dana Duncan on behalf of August Fetting. The issue before the Court is the reliability of adopted that vocational testimony, finding it supported by substantial evidence. To start out, let's address the issue that's been raised several times in the briefs of the government. You do not have to object to the vocational testimony. The Supreme Court in D-6 said for the rule to kick in the applicant must make a demand for the expert's data. It doesn't say objection, doesn't say only after it says demand. This Court used the term challenge in Ringer. You have to bring it to the attention of the judge, though, so the judge can address it in the first instance. If you want to call it an objection or in whatever manner, did you bring it to the ALJ's attention so the ALJ was on notice to address it? It's where the issue of ambiguity comes in. The Court or the Commission itself has said that in the HALIX, the judge shall address all testimony and solicit testimony that's consistent and understandable to the average person. So once the ambiguity is raised, and in this case, there are two things that have to happen. One is that the testimony has to be clear enough that it can be reproduced or, and I guess what I would actually encourage is to clarify, this Court has used for ALJ's trace the path of reasoning. I think the same standard could be applied to the vocational testimony. You have to see where it comes from. Otherwise, you run the risk of it being made out of whole cloth, and that's where the problem in this particular case comes in. But the question is how did you with the vocational experts' testimony? Assume we accept your presence, your argument that you don't have to object. I'm not sure that's true. But even if we assume that, it can't be that you could just come up here and raise an issue because the testimony below was ambiguous and not clear. You have to raise it for the ALJ to be on notice of it in the first instance and preserve that can be an issue in this particular case since the ALJ asked not one question. The ALJ waived any opportunity. Are you agreeing that you didn't preserve this in any way? I am not agreeing. I think that the question is, is that you raise the ambiguity. For example, I'm sorry, the question is, is it your argument that if the vocational experts' testimony was ambiguous that that alone preserves it for appeal even if you don't complain in some way, shape, or form below? Correct, because that is ultimately. That means you could always appeal it. No, because it's not always ambiguous because the vocational expert can come in and testify to the use, for example, of the occupation employment quarterly and under the Chavez decision where he's gone and double checked it. He used county business patterns to determine that there is corresponding data that matches up and that this is a reliable method that he employs. There's no ambiguity in that. He could come in and use the JobBrowserPro computer program and say that he understands it, explain how it's reliable. He could use his own system and he could come in and say, I have done market studies to show that this data is reliable and this is the exact method I used to calculate it and this is why it's reliable. But we don't have that. All we have is testimony from a vocational expert that he came in and he picked out certain jobs and weighed them and decided that the number is some lesser amount without utilizing any formula, without explaining exactly how he went about doing it. He just took and carved out a portion of the total number and then, as my chart noted, it wasn't even And you look at the fact that we have multiple DOT codes that fall under those specific SOC codes where the data is derived and they don't even match. We've had this discussion a few times, the two of us. I recalculated myself here. I think I know how the I think I figured out how the equal distribution works across these three job categories. Let's just focus on housekeeper. You start with 92,695. That's what the equal distribution method yields. Ultimate opinion of the VE is 200,000. So you say, well, how are we jumping from 92,695 to 200,000? That's your argument. Your here in the transcript. It's not fully explained. Correct. Okay. I think what the VE is doing without saying it nearly to the degree that we would prefer is, well, because the equal distribution method rests on a counterfactual assumption that jobs are distributed equally across the DOT codes. We know that that empirically is not true. And so when I think of a housekeeper and I think of 92,695 jobs vis-a-vis the equal distribution methodology, based upon my experience and my expertise, I believe that number has to be greater than that. And all I'm doing is approximating it at 200,000. That's what this testimony is. The problem is that the transcript doesn't say that. Correct. And here's the further problem. Because he didn't say that, my associate was in the court or handled this hearing. The next question would have been, how many housekeepers in the national economy are required to drive from house to house when, in this particular case, the hypothetical question prohibited driving a motor vehicle? Okay. Fair enough. But that goes back to Judge St. Eve's point. And that is that your associate, or you, given the many exchanges we've had in this very courtroom about unpreserved objections, and your position is very clear that this Step 5 is on the ALJ. It's not on the applicant. But the case law is stacking up against you on that. And so the answer is Mr. Gusloff, right? The V.E.? Yes. I don't know how you got to 200,000. I don't know how you're getting to 200,000. You've not explained that yet. So my question is, how do you jump from 92,000 to 200,000? What are the links in the chain of the reasoning? Your colleague's very capable of asking that question. And the V.E. will say what he says. And the transcript is going to be different on appeal. Correct. And again, I'm dealing, this was very early in the process of dealing with these cases. But here in the particular circumstance, we did ask him to explain and to go through with how he came up with it. And there's nothing that is that clear. And the real deciding factor in this is the fact that the ALJ, despite having the questions to clarify, if the ALJ would have exercised the duty to ask any questions at all to further clarify, then the record also would have been better than it is. And that's the problem with this. And that is, at what point does the applicant have to continue to And we're actually helping the government prove that the person's not disabled. And that raises an ethical consideration for me. I'll preserve the last 30 seconds for. Yeah, very well. Thank you, Mr. Duncan. Okay, we'll hear from the commissioner. Morning, Your Honors. May it please the court. Judy Tsui on behalf of the Commissioner of Social Security. I'd like to begin just by addressing one of the points that Mr. Duncan made, which is regarding the chart that he included on page 22 of his opening brief. And he had said something of the nature of the numbers here don't match the vocational experts testimony. But that's simply not the case. And that is not something that he has raised at any point in the briefing. Beyond that, I want to point out that the question before the court today is narrow. Mr. Fetting does not dispute that he can work as a housekeeper cleaner, marker, or rowdy. He only challenges the vocational experts testimony that there are 440,000 estimated jobs nationally within these occupations. Accordingly, there are only two issues before this court. First, whether Mr. Fetting waived or forfeited his challenge by failing to object to the vocational experts testimony. And second, whether the vocational experts testimony constituted substantial evidence supporting the ALJ's decision. The answer to both these questions is yes. As to waiver or forfeiture, as this court has pointed out, the court's prior decisions, including Inquire, Donahue, and Liskowitz, demonstrate that it was incumbent upon Mr. Fetting's attorney to ask questions that would reveal shortcomings in the vocational experts testimony and to object if any such shortcomings were found. Fetting's counsel stated at the hearing that he had no objections to the vocational experts qualifications, but, quote, reserved his right to object to specific testimony if necessary. However, after asking the vocational expert just a handful of questions about his process and receiving detailed and earlier statement that he may wish to do so. This was a waiver. Also, at this point, I want to briefly address Mr. Fetting's assertions in the reply brief that the Supreme Court's decisions in Carr and Sims mean that there is no waiver in Social Security cases. Despite suggesting otherwise in his reply brief, Mr. Fetting said nothing about either Carr or Sims in his opening brief, and this argument was therefore waived or forfeited. In short, the appellant failed to reveal any shortcomings in the vocational experts testimony, and this court's inquiry could end here. However, waiver or forfeiture aside, the vocational experts In SOC, Mr. Gusloff, who is the same vocational expert as testified in this case, offered extremely similar testimony, and this court concluded that it was, quote, sufficient for the agency to meet its modest evidentiary burden. Here, as in SOC, Mr. Gusloff offered ample foundation for his expert and shared all the data inputs he which was statistics from the U.S. Bureau of Labor Statistics. Second, Mr. Gusloff explained how he used that source. In particular, he explained that based on his knowledge of the job market and over three decades of experience, the vocational expert looked at the composition of the relevant SOC group to determine the is light years more clear than is in that transcript? Galaxies more clear? Okay, that's why we keep having these discussions. That's why we keep having these appeals, because I think what you just said is absolutely accurate. I do. I think it's accurate. But how you get that from the transcript is much more So sometimes it's not as concise. They speak in code. They seem to speak in a hurry. That's true. And there is limited time at the hearing, but I will say that, you know, Mr. Gusloff did provide all the information that I'm talking about today. That's where I'm getting it from, is the hearing transcript. And he did go on to even give an example of how he calculated the housekeeper cleaner positions. And he explained, again, that his source was the Bureau of Labor Statistics. He listed the total number of jobs in the larger category. And then he specified that there were 10 dictionary of occupational title codes in that group. So in addition to identifying all these data inputs, Mr. Gusloff explained how he used those inputs to inform his estimates based on his experience and knowledge. For example, he identified other jobs in the SOC group that he did not rely upon because they were smaller, more niche-type positions that would not be commonly found in the national economy. And those included ironer or second butler. And Mr. Gusloff also explained that based on his knowledge and experience, he knew that many housekeeper cleaner positions could be found across different industries and would make up a larger portion of the overall jobs. And notably in the SOC case, where Mr. Gusloff also estimated a total of 200,000 housekeeper jobs, this court held that SOC could not, quote, credibly argue that jobs such as cafeteria attendant or housekeeper do not exist in significant numbers in the national economy. In all, Mr. Gusloff's testimony more than cleared the modest substantial evidence bar. If the court does not have any additional questions at this time, I would like to I just have one. From your day-to-day work and your experience in this area, have you received any information on where we stand with the project that commenced in 2008 to create a new, revised, modernized, unified job numbers system? Your Honor, I unfortunately do not have a specific timeline for that. I understand the court is frustrated with this process and that has been ongoing. All I know is that it is currently being worked on. Thank you very much. In answer to that question, as far as I know, the Bureau of Labor Statistics just did another survey in 2022 and have inputted that data. So at least it's moving along, but I'm hearing rumblings they may scrap it again. So I don't know, but at least that data is available and has been integrated into Job Browser Pro. Just a couple of things. The issue in this case also is the fact that even though we have a problem with Mr. Gusloff's testimony being unclear, he also never really stated why he believed his methodology was actually reliable, which is required. And that, again, as far as the court worrying about these appeals continuing, they're drying up. It's having its effect. Mr. Dunton, hold on. I'm not worried about them continuing. There is an awful lot at stake in these cases for the clients you represent. Yes. The court, that is as clear as day. And they should continue to appeal as long as they believe that there are errors made. Yes, and that's not what I meant, Your Honor, and I understand that. I think what I'm saying is the judges have become more attuned. I had a hearing yesterday by phone from my hotel room, and the judge said, I don't understand what you're testifying to, so you're going to provide me the data so that I can look at it. And then if Mr. Duncan has any further objection, he can notify me. There's no question these transcripts can improve. Yes.  All right, very well. If there are no further questions, then thank you. Okay, thanks to both counsel. We'll take the appeal under advisement.